**MORTGAGE INFORMATION SERVICES, INC.,**
**Plaintiff,**

v.

**Paul C. KITCHENS, Donald R. Strickland, Mid–Atlantic Title Services, Inc., and Randy S. Richardson, Defendants.**

No. 3:01–CV–106–V.

United States District Court,
W.D. North Carolina,
Charlotte Division.

May 15, 2002.

Charles E. Johnson, Robinson, Bradshaw & Hinson, P.A., Charlotte, NC, Jeffrey S.

Dunlap, Mark D. Katz, Ronald H. Isroff, Ulmer & Berne, Cleveland, OH, for plaintiff.

Gerard A. Bos, Wilson & Bos, Charlotte, NC, Michael L. Fortney, Fortney & Klingshirn, Akron, OH, Christopher G. Chagaris, The Macintosh Law Firm, Davidson, NC, for defendants.

## *MEMORANDUM OPINION*

CACHERIS, District Judge.

This matter is before the Court on a Motion for a Protective Order brought by Defendants Paul C. Kitchens ("Kitchens"), Donald R. Strickland ("Strickland"), and Mid–Atlantic Title Services, Inc. ("Mid–Atlantic") (collectively "Defendants") in response to a subpoena duces tecum issued by Plaintiff Mortgage Information Services, Inc. ("Plaintiff"). At the core of this dispute are two questions on which courts in other jurisdictions have taken conflicting positions: (1) whether a subpoena duces tecum may properly be filed and served on a party opponent under the terms of Rule 45; and (2) whether a Rule 45 subpoena constitutes "discovery," such that it is untimely if filed and served following the close of the discovery period.

For the reasons stated herein, the Court holds that a Rule 45 subpoena duces tecum may properly be served on a party, but that such service constitutes discovery which, in order to be timely, must be served prior to the discovery deadline.

### I. Background

This case involves a suit for breach of contract. Specifically, Plaintiff alleges that Defendants Kitchens and Richardson violated restrictive covenants contained in their respective employment agreements. Plaintiff therefore asserts various claims against these Defendants as well as their current employer and supervisor, Defendants Mid–Atlantic and Strickland.

Pursuant to court order, the trial of this matter was originally set to begin on September 24, 2001, with discovery to be completed no later than August 7, 2001. Although the trial was continued until March 25, 2002, the discovery period was never reopened. Following the failure of settlement negotiations, Defendant Richardson, on March 19, 2002, filed a motion in limine seeking to exclude certain evidence regarding Plaintiff's claims for damages. (Resp. of Pl. in Opp'n to Def.'s Mot. for Protective Order at 3.) The remaining defendants subsequently represented that they too intended to challenge Plaintiff's damages evidence. (*Id.*) As a result, Plaintiff, on March 20, 2002, served a subpoena duces tecum on Defendant Strickland in an effort to obtain documents necessary to corroborate its evidence with respect to damages. (*Id.* at 2–3.) Defendants now seek protection from this subpoena.

### II. Analysis

Under the Federal Rules of Civil Procedure, a person desiring to challenge the issuance of a subpoena duces tecum has several options. *See Anker v. G.D. Searle & Co.*, 126 F.R.D. 515, 518 (M.D.N.C.1989) (holding that a subpoena duces tecum may be quashed, "modified for being unreasonable, or conditionally allowed upon payment of production costs" pursuant to Rule 45(b), and may also "be the subject of a protective order in accordance with the provisions of Rule 26(c)"). Here, Defendants seek both the imposition of a protective order [1] and the quashing of the subpoena. Specifically, Defendants argue that (1) a subpoena duces tecum, as utilized in this case, is not an appropriate discovery tool under the Federal Rules of Civil Procedure; and (2) Plaintiff's subpoena is an untimely attempt to circumvent the discovery cut-off date established by the court order. Defendants concede that discovery outside of the normal discovery period may be granted by the Court, but argue that such discovery should not be permitted in this case, particularly in light of the fact that some of the documents requested have allegedly been produced and that others could have been— but were not—sought by Plaintiff through a

---

1. The issuance of a protective order is appropriate where the person subject to the discovery request demonstrates good cause, and where the Court finds that it is necessary "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c).

timely motion to compel. Accordingly, Defendants contend that the issuance of a protective order is appropriate.

Plaintiff counters that (1) the subpoena was properly issued under Rule 45 of the Federal Rules of Civil Procedure; (2) the documents sought are relevant, and should have been provided in response to a prior discovery request to which Defendants failed to object; and (3) the documents are sought for trial rather than discovery purposes. The Court will address each issue in turn.

## A.

■ First, with respect to whether a Rule 45 subpoena may properly be served on a party, the Court notes that other district courts that have addressed this issue in recent years have taken conflicting positions. For example, in *Hasbro, Inc. v. Serafino*, 168 F.R.D. 99, 100 (D.Mass.1996), the court held that Rule 45 subpoenas are only applicable to non-parties, and that documents sought from parties must be requested pursuant to Rule 34. In support of this position, the *Hasbro* court stated as follows:

> Rule 34, which unquestionably applies only to parties, illuminates the scope of Rule 45 when it directs that "a person not a party to the action may be compelled to produce documents and things or to submit to an inspection as provided in Rule 45."

*Hasbro*, 168 F.R.D. at 100 (quoting Fed. R.Civ.P. 34(c)); *see also Alper v. United States*, 190 F.R.D. 281, 283 (D.Mass.2000) (stating that " 'while the language of Rule 45 ... may ... not be crystal clear, it is apparent ... that discovery of documents from a party, as distinct from a non-party, is not accomplished pursuant to Rule 45' ") (quoting *Hasbro*, 168 F.R.D. at 100).

Other districts, however, have taken the opposite view. In *Badman v. Stark*, 139 F.R.D. 601 (M.D.Pa.1991), the court held that, although Rule 34 applies only to parties, "a subpoena under Rule 45 may be served upon both party and non-party witnesses." *Id.* at 603 (citing *Continental Coatings Corp. v. Metco, Inc.*, 50 F.R.D. 382, 384 (N.D.Ill. 1970)); *see also First City, Texas–Houston, N.A. v. Rafidain Bank*, 197 F.R.D. 250, 255 n. 5 (S.D.N.Y.2000), *aff'd*, 281 F.3d 48 (2d

Cir.2002) ("While a Rule 45 subpoena is typically used to obtain the production of documents and/or testimony from a non-party to an action ... nothing in the Federal Rules of Civil Procedure explicitly precludes the use of Rule 45 subpoenas against parties.") (citing *Badman*, 139 F.R.D. at 603).

Moreover, just as the courts are split on this issue, so too are the leading treatises. Wright & Miller's *Federal Practice and Procedure* cites *Hasbro* for the proposition that "[d]iscovery of documents from a party is not accomplished pursuant to Rule 45; a party seeking to compel the production of documents from another party must comply with the relevant discovery rules." Charles Alan Wright & Arthur R. Miller, 9A *Federal Practice and Procedure* § 2452 at n. 1 (2d ed.1995 & Supp.2001). By contrast, *Moore's Federal Practice*, citing the text of Rule 45, states that it "may be used to subpoena any person—party or nonparty—to produce books, documents, or tangible things at the trial." James Wm. Moore et al., 7 *Moore's Federal Practice* § 34.02[5][c] (3d ed.1997); *see also* 9 *Moore's Federal Practice* § 45.03[1] (noting that "[s]ubpoenas under Rule 45 may be issued to parties or non-parties"). *Federal Procedure* reaches a similar conclusion. *See* 10A *Federal Procedure, Lawyers Edition* § 26:464 (1994) (stating that "FRCP 45, unlike FRCP 34(a) and (b), applies to nonparties as well as parties") (footnotes omitted).

The Court, in examining the merits of these two conflicting positions, notes as a preliminary matter that the parties do not cite any decisions by the Fourth Circuit—or by any district court within this Circuit—that address either of the questions presented in this case. The Court is similarly unaware of any recent holdings from within the Fourth Circuit regarding these issues. It has, however, located two decisions that pre-date many of the substantive amendments to Rule 45, both of which indicate a willingness to allow the use of Rule 45 subpoenas against party opponents. *See Guilford Nat'l Bank of Greensboro v. Southern Ry. Co.*, 297 F.2d 921, 927 n. 2 (4th Cir.1962) (noting in *dicta* that a Rule 45 subpoena may be used against an opposing party); *McLean v. Prudential S.S. Co.*, 36 F.R.D. 421, 425 (E.D.Va.1965)

(holding that a party may not avoid a requirement of Rule 34 when proceeding against another party pursuant to Rule 45(b)). Despite the fact that these courts were interpreting a version of Rule 45 that differed significantly from the current one, the Court believes that this approach nevertheless represents the better view with respect to the rule's present iteration as well.

In addition to the case law and treatise excerpts cited above, the Court reaches this conclusion based in large part on a careful review of the text of Rule 45 itself, which reveals that there is no express limitation on the type of person who may be subject to the rule, as its language describes the individual upon whom a Rule 45 subpoena may be served simply as a "person" rather than a "non-party." Had the drafters of Rule 45 intended to restrict its scope to non-parties, they could easily have done so. Indeed, the separate and distinct use of the terms "person" and "person who is not a party" in the text of Rule 45 clearly demonstrates that the drafters were aware of the effect they would have on the scope of the rule's various provisions.

For example, the drafters limited the type of person eligible to serve a Rule 45 subpoena by stating in subsection (b)(1) that service may only be accomplished by a "person who is not a party" and is over the age of eighteen. Fed.R.Civ.P. 45(b)(1). They nevertheless elected not to use similar language in describing those subject to service under subsections (a), (c), (d), and (e). The Court must therefore conclude that this was a conscious choice, and that Rule 45, by its terms, was intended to apply to parties and non-parties alike.

Furthermore, in reconciling this holding with conflicting case law, the Court finds that the *Hasbro* Court's reliance on the language of Rule 34(c), which it used to restrict the scope of Rule 45 to include only non-parties, was misplaced. When in doubt as to the proper construction to apply to a particular rule of civil or criminal procedure, courts should look to the Advisory Committee Notes for guidance. *See United States v. Vonn,* 535 U.S. 55, 122 S.Ct. 1043, 1049 n. 6, 152 L.Ed.2d 90 (2002) ("In the absence of a clear legislative mandate, the Advisory Committee Notes provide a reliable source of insight into the meaning of a rule ...."). While the scope of the intended interaction between Rules 34 and 45 is admittedly somewhat unclear, the Advisory Committee Notes to Rule 34 are instructive. The notes state that, although the rule does not apply to non-parties, this is so only because the expansion of its scope to encompass non-parties would create a host of complex problems of both a procedural and jurisdictional nature. Fed. R.Civ.P. 34 Advisory Committee Notes. The drafters of Rule 34 included subsection (c), which is the portion of the rule cited in *Hasbro,* for the simple purpose of "mak[ing] clear that Rule 34 *does not preclude* independent actions for discovery against persons not parties." *Id.* (emphasis added). Nowhere in the text of the rule or the Advisory Committee Notes is it stated that any provision of Rule 34 is intended to restrict the scope of Rule 45.

Accordingly, rather than acting as a limitation on Rule 45, subsection (c) of Rule 34 was included for the express purpose of ensuring that Rule 45 would not be unduly restricted by the language contained in subsections (a) and (b) of Rule 34. The text of Rule 34(c) therefore does not necessitate the conclusion reached by the magistrate judge in *Hasbro.* Furthermore, the Court perceives no internal inconsistencies between Rules 34 and 45 because, as other courts have noted, the two rules serve fundamentally different purposes. *See Badman,* 139 F.R.D. at 603 (noting that "Rule 34 is invoked merely to inspect documents prior to trial," whereas "Rule 45 is utilized to compel production of documents for use at depositions or the trial"). Therefore, in the absence of any explicit limitation from the drafters of the Federal Rules of Civil Procedure, the Court declines to adopt an interpretation of Rule 45 which would unduly limit its scope.

Moreover, as discussed in greater detail below, instances may arise in which it becomes necessary, from a practical standpoint, to serve a subpoena duces tecum on an opposing party. For example, modern practice invariably involves the production of copies of documents responsive to a discovery request

as opposed to the delivery of the original papers themselves. Yet there may be times when a party's original documents are needed for trial. *See Rice v. United States*, 164 F.R.D. 556, 558 n. 1 (N.D.Okla.1995) (noting the utility of using Rule 45 subpoenas for purposes of "secur[ing] the production at trial of original documents previously disclosed by discovery"). In such cases, issuing a subpoena duces tecum pursuant to Rule 45 would be the most logical way to ensure that an opposing party has such originals in its possession at the outset of trial. Limiting the scope of Rule 45 to include only non-parties would clearly frustrate this purpose.

**B.**

■ Having held that a Rule 45 subpoena may properly be served on a party, the Court now turns to the issue of whether such a subpoena constitutes "discovery," thereby requiring that it be filed and served prior to the close of the discovery period.[2] After reviewing the relevant case law on both sides of this issue, the Court adopts the rule followed by the majority of jurisdictions and holds that a Rule 45 subpoena does in fact constitute discovery. *See, e.g., Dreyer v. GACS, Inc.*, 204 F.R.D. 120, 122 (N.D.Ind. 2001) (noting that "[m]ost courts hold that a subpoena seeking documents from a third-party under Rule 45(a)(1)(C) is a discovery device and therefore subject to a scheduling order's general discovery deadlines") (citing Sergent, 34 MD. B.J. at 58); *Integra Lifesciences I, Ltd. v. Merck*, 190 F.R.D. 556, 561 (S.D.Cal.1999) (observing that "[c]ase law establishes that subpoenas under Rule 45 are discovery, and must be utilized within the time period permitted for discovery in a case"); *Marvin Lumber and Cedar Co. v. PPG Indus., Inc.*, 177 F.R.D. 443, 443–44 (D.Minn.1997) (holding that subpoenas duces tecum meet the definition of discovery contained in Rule 26(a)(5), and that they are

therefore "subject to the same time constraints that apply to all of the other methods of formal discovery"); *Rice*, 164 F.R.D. at 557 ("Rule 45 subpoenas duces tecum … constitute discovery."); 7 *Moore's Federal Practice* § 34.03[2][a] (stating that, "[a]lthough Rule 45 is not limited by its terms to nonparties, it should not be used to obtain pretrial production of documents or things, or inspection of premises, from a party in circumvention of discovery rules or orders").

As other courts have noted, this conclusion is essentially mandated by the text of Rule 26, which expressly incorporates Rule 45 subpoenas into its definition of discovery. *See Dreyer*, 204 F.R.D. at 122–23; *Rice*, 164 F.R.D. at 557. Further, it is also mandated by the traditional canons of interpretation regarding the interaction between the various Federal Rules of Civil Procedure, which require that the rules be construed in a manner that is internally consistent. *See, e.g., Hickman v. Taylor*, 329 U.S. 495, 505, 67 S.Ct. 385, 391, 91 L.Ed. 451 (1947) ("The deposition-discovery rules create integrated procedural devices."); *Tiedman v. American Pigment Corp.*, 253 F.2d 803, 808 (4th Cir. 1958) (holding that Rules 26 and 45 "are in *pari materia* to Rule 34"); *Drexel Heritage Furnishings, Inc. v. Furniture USA, Inc.*, 200 F.R.D. 255, 258 (M.D.N.C.2001) (noting that "[c]ourts have long viewed the discovery rules as an integrated mechanism to be read in *pari materia*"); *Cooney v. Sun Shipbuilding & Drydock Co.*, 288 F.Supp. 708, 717 (E.D.Pa.1968) (holding that, "with respect to subpoenas to parties, Rule 45 must be construed in *pari materia* with Rule 34" because "[a]ny other construction would be untenable"); *see also* Charles Alan Wright & Arthur R. Miller, 9A *Federal Practice and Procedure* § 2452 at n. 2 (citing *Hickman*, 329 U.S. at 505, 67 S.Ct. at 391, and *Tiedman*, 253 F.2d at 808). Allowing a party to use Rule 45 to circumvent the requirements of a

---

2. The Court has researched this topic extensively, and notes that a recent article in the Maryland Bar Journal is particularly helpful in addressing this question. *See* Randolph S. Sergent, *Federal Document Subpoenas and Discovery Deadlines*, 34 MD. B.J. 54 (Sept./Oct.2001). While observing that this issue is an open question in the Fourth Circuit, Sergent contends that the emerging majority position among federal courts that have addressed it is to consider a Rule 45 subpoena to be "discovery" that is untimely if filed and served following the close of the discovery period. *See id.* at 54–57. Sergent therefore urges practitioners "to conduct all possible document discovery within the discovery period, regardless of whether production is sought by means of a document request under Rule 34 or a subpoena under Rule 45." *Id.* at 58.

court-mandated discovery deadline would clearly be contrary to this approach. *See Dreyer*, 204 F.R.D. at 123 (" 'To allow a party to continue with formal discovery . . . whether in the guise of Rule 45, or any of the other discovery methods recognized by Rule 26(a)(5), after the discovery deadline unnecessarily lengthens the discovery process, and diverts the parties' attention[ ] from the post-discovery aspects of preparing a case for Trial.' ") (quoting *Marvin Lumber*, 177 F.R.D. at 445); *McLean*, 36 F.R.D. at 425 (holding that a party may not use Rule 45 to circumvent a requirement of Rule 34, and concluding that "[i]t is unthinkable that the effect of Rule 34 can be emasculated by the use of Rule 45"). Furthermore, this holding is also consistent with the magistrate judge's statement in *Potomac Elec. Power Co. v. Electric Motor Supply, Inc.*, 190 F.R.D. 372 (D.Md.1999), which indicated that court's inclination to reach this conclusion had the issue been formally raised by counsel in that case. *See id.* at n.8; Sergent, 34 MD. B.J. at 54 (discussing *Potomac Elec. Power Co.*).

■ The Court notes, however, that situations may arise in which a subpoena duces tecum may not constitute discovery, and therefore may properly be filed and served following the close of the discovery period. *See, e.g., Rice*, 164 F.R.D. at 558 n. 1 (clarifying that "not all uses of Rule 45 subpoenas would constitute discovery and thereby be affected by discovery deadlines. For instance, a Rule 45 subpoena may be employed to secure the production at trial of original

documents previously disclosed by discovery."); *Puritan Inv. Corp. v. ASLL Corp.*, No. Civ. A. 97–1580, 1997 WL 793569, at *1 (E.D.Pa. Dec. 9, 1997) (finding that "[t]rial subpoenas may be used to secure documents at trial for the purpose of memory refreshment or trial preparation or to ensure the availability at trial of original documents previously disclosed by discovery"); Sergent, 34 MD. B.J. at 56–57 (discussing *Rice* and *Puritan Inv. Corp.*).

■ After a careful review of the document request submitted in conjunction with Plaintiff's subpoena duces tecum in this case, the Court finds that the documents requested are unquestionably sought for discovery purposes and therefore do not fall within any of the exceptions described above. In reaching this conclusion, the Court notes the broad language used in the document request, which seeks the production of entire categories of documents rather than itemizing specific documents necessary for use as exhibits at trial.[3] Furthermore, the Court also notes as significant the fact that the documents sought in the subpoena were requested—but not produced—during the course of discovery. Plaintiff nevertheless failed to seek to compel the production of these documents prior to the close of discovery. It therefore waived its right to obtain access to them. *McNerney v. Archer Daniels Midland Co.*, 164 F.R.D. 584, 588 (W.D.N.Y.1995) ("[W]hen a plaintiff . . . is aware of the existence of documents before the discovery cutoff date and issues discovery requests including sub-

---

**3.** Specifically, the subpoena directs Defendant Strickland to produce the following:

1. All documents showing Mid–Atlantic's dollar sales for each month from January 1, 1999 through March 20, 2002 to each of its customers.

2. All documents showing Mid–Atlantic's dollar sales for each month from January 1, 1999 through March 20, 2002 to each of the following customers:

  A. AmeriBank
  B. American General
  C. BB & T
  D. Charlotte Metro Credit Union
  E. Compuscope
  F. Equity One
  G. Pillowtex Credit Union
  H. SLM
  I. Southeast Federal Credit Union (S.E.F.C.U.)
  J. Washington Mutual
  K. Wells Fargo

3. All documents that constitute, contain, describe, mention, reflect or refer or relate to Mid–Atlantic's agreements with any of the customers listed in paragraph 2 above.

4. All documents that that [sic] constitute, contain, describe, mention, reflect or refer or relate to any communications between Kitchens, Strickland, Richardson or Mid–Atlantic and any of the customers listed in paragraph 2 above, from January 1, 1999 through the present.

5. All documents which refer or relate to any title insurance, real estate property reports or real estate appraisal reports written or sold by Paul C. Kitchens or Randy S. Richardson during their employment with Mid–Atlantic.

(Mot. for Protective Order by Defs. at Ex. A.)

poenas after the discovery deadline has passed, then the subpoenas and discovery requests should be denied."). Finally, Plaintiff, through its submissions with respect to this issue, concedes that it seeks these documents "because it believes the documents will corroborate its damages evidence" (Resp. of Pl. in Opp'n to Def.'s Mot. for Protective Order at 5), thereby indicating that the documents are clearly sought as discovery rather than for any of the legitimate trial preparation purposes outlined above.

The Court also is not persuaded by Plaintiff's argument that it failed to properly file a motion to compel the production of these documents prior to the August 17, 2001, discovery cutoff because it believed that such a motion would jeopardize the then-scheduled trial date of September 24, 2001. The discovery deadline lapsed more than five weeks prior to the initial trial date. The Court therefore fails to see how the timely filing of a motion to compel would have required a rescheduling of that date. Indeed, the subpoena currently at issue, which requests substantially the same documents that would have been the subject of a motion to compel, was filed and served by Plaintiff only five days prior to the current trial date. Accordingly, the Court concludes that a denial of further discovery is appropriate in this case. *See Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.,* 116 F.R.D. 363, 365 (M.D.N.C.1987) ("A reasonable discovery schedule may be enforced, even if relevant discovery is denied, unless extenuating circumstances compel a contrary finding.").

## III. Conclusion

For the foregoing reasons, the Court holds that service of a Rule 45 subpoena duces tecum upon a party opponent is appropriate when done prior to the close of the discovery period. Because the subpoena duces tecum was not timely served in this case, Defendant's Motion for a Protective Order will be granted and the subpoena will be quashed.